## MINA LORSCHER v. THE SUPREME LODGE KNIGHTS OF HONOR.

*Benefit   associations—Knights   of   Honor—Certificate—Proofs   of death—Denial of execution.*

1. Under the constitutions and regulations of the Knights of Honor, when the supreme lodge signs a benefit certificate, and forwards it to the subordinate lodge, the contract is complete, and it is the duty of the subordinate lodge to deliver it, and it holds it for the member until delivered to him.

2. In such a case, if the local lodge assumes the right to retain the certificate because of alleged fraudulent practices and representations of the member at time of becoming such, the beneficiary in a suit to recover the insurance may be excused from producing the certificate on the trial.

3. Where, in such a case, there is sufficient testimony to enable the jury to determine what the contract of insurance was, if the certificate contains any special provisions or limitations which do not appear from the constitutions and regulations

and other evidence in the case, it is the defendant's duty to produce it.

4. Insurance, if it may be so called, in benefit associations, is usually for the benefit of the widow or other person dependent upon the member in his life-time, and where the constitution makes it the duty of the subordinate lodge to report the death of a member to designated officers of the supreme lodge, and to make a report to the state medical examiner of the circumstances of his last illness and death, and to notify the beneficiary that it is unnecessary to employ or pay any person for obtaining payment of the benefit, the intention is manifest that the officers of the local lodge undertake to make and certify the proofs of death, and to do everything required to place the beneficiary in the possession of the benefit secured by the certificate.

5. When, in a suit to recover such benefit, the defendant sets up the death of the member, and refuses to pay on the ground of fraud practiced in becoming such, it will be presumed that proofs of death were made by the subordinate lodge.

6. Where, in such a case, the declaration avers that there was duly prepared a paper, in the usual form, assuring to the member and to the plaintiff the benefit sued for on the death of the member, which averment is not denied by the defendant under circuit court rule 79, the execution of the certificate will be deemed to be admitted for the purposes of the trial, which admission will support a verdict in favor of the plaintiff, although the certificate is not introduced in evidence.

Error to Berrien. (O'Hara, J.) Argued June 13, and re-argued October 2, 1888. Decided November 1, 1888.

*Assumpsit* for benefit insurance. Defendant brings error. Affirmed. The facts are stated in the opinions.

*Padgham & Padgham,* for appellant, contended:

1. The burden of proof was upon the plaintiff to show—

   a—That a petition for membership was duly presented to and approved by the lodge.

   b—That the applicant presented himself to the medical examiner, and answered the questions required of .him.

   c—The issuance of the certificate of membership or policy.

   d—Payment of the dues and assessments required of the deceased for the benefit of the widow and orphans' benefit fund, up to the time of his death.

*e*—Notification to the lodge of the death of the member, and request for and refusal of payment; citing Bailey's Onus Prob. 584; *Ingalls v. Eaton*, 25 Mich. 32; *Berringer v. Iron Co.*, 41 Id. 305.

2. Upon the trial the petition or application was the only one of the foregoing points proved.

3. Plaintiff failed to make out any contract relations between herself and the defendant through the assurance of her husband's life, and entirely failed to prove performance by him of any contract whatever.

4. The policy (benefit certificate), unless admitted, should be produced or accounted for, and the signatures, including countersigning, proved; citing Abbott's Trial Ev. 477; *Hunter v. Ins. Co.*, 4 Hun, 794; and the policy is sufficient to show a contract without proof of the application; citing *Edington v. Ins. Co.*, 67 N. Y. 185; and the fact that there was no application does not affect the policy; citing May, Ins. § 169; and these cases show that the policy, and not the application, contains the contract.

*Clapp & Bridgman,* for plaintiff.

CHAMPLIN, J.   Defendant is a corporation organized under the laws of the state of Missouri.   The object of the corporation is stated in section 2 of the certificate of organization, as follows:

"Sec. 2. The objects of the corporation shall be to unite fraternally all acceptable white men of every profession, business, and occupation; to give all possible and material aid in its power to its members, and those depending on its members, by holding moral, instructive, and scientific lectures, by encouraging each other in business, and by assisting each other to obtain employment; and to promote benevolence and charity by establishing a widow and orphans' benefit fund, by contributions from members of the order of Knights of Honor, from which, upon satisfactory evidence of the death of a member of the said order, who is a contributor to said fund at the time, and who has complied with its lawful requirements, a sum not exceeding five thousand dollars ($5,000) shall be paid to such member or members of his family, or person or persons dependent on him, as he may direct and designate by name; to provide for creating a fund or funds for the relief of sick and distressed members, and

to ameliorate the condition of humanity in every possible manner."

Section 7 of said certificate provides as follows:

" The said supreme lodge shall have power to create, hold, and disburse the funds named in the objects of the ·corporation, for promoting benevolence, and relieving the sick and distressed, under such constitutions, laws, and regulations as it has now adopted, or may deem necessary to adopt; and said fund shall be exempt from exe- ·cution, and shall under no circumstances be liable to seizure or appropriation by any legal or equitable process, ·or to any debt or debts of its living or deceased members; and said fund shall be exempt from the laws, rules, and regulations governing the insurance bureau of this state."

The corporation adopted constitutions, laws, and regu- lations for creating, holding, and disbursing the funds referred to, forming a complete system, which constitute the laws and rules by which all the rights, interests, ·duties, and obligations of the members are defined, regulated, controlled, and enforced, and the rights and obligations of the corporation are prescribed. These con- stitutions, laws, and regulations prescribe and point out the method of becoming members of the supreme and subordinate lodges, and when and in what manner the beneficiary named by a member of a subordinate lodge becomes entitled to share in the fund provided for the benefit of widows and orphans.

A candidate possessing the requisite qualifications, must sign a written application in a prescribed form, in which he must designate the beneficiary. A committee of three is then appointed to investigate his character, and, if found favorable, one of the committee accompanies the candidate to the lodge medical examiner, who makes an examination, and the applicant is required to answer in writing certain ·questions, and the medical examiner is required to make a certificate; and his examination and certificate, if he approve the candidate, is forwarded to

the state medical examiner, who makes a report thereon, and, if favorable, then upon payment of the fees prescribed by the lodge, and the amount required to be paid into the fund for the benefit of the widows and orphans, he is initiated into the lodge, and receives the degree of " Manhood."

The assessments which he must thereafter pay depend upon his age when initiated. If between 18 and 45, it is one dollar for each assessment, and every member must pay at least two assessments each month, unless otherwise ordered by the supreme reporter; which assessments are to be made on or before the end of each month. After the member is initiated, the initial assessment must be forwarded by the lodge with the first assessments called to the supreme lodge subsequent to the date of his obtaining the degree. Such assessments are required to be forwarded to the supreme treasurer between the 1st and 10th day of each month.

Every lodge is required to forward to the supreme reporter all applications for beneficiary membership immediately after the applicant receives the degree, and with each application one dollar to pay for a benefit certificate, and for making record of membership.

Each applicant must enter upon his application the name or names of, and relationship or dependence of, the members of his family, or those dependent upon him, to whom he desires his benefit paid; and the same is required to be entered in the benefit certificate according to said direction, and no will is permitted to control the appointment or distribution of, or rights of any person to, any benefit payable by the order.

On receipt of the application and fee the supreme reporter enters the name, age, occupation, date of taking the degree, amount of one assessment, and such other facts as may be deemed necessary, upon a register, the

roll of each lodge by itself, and indexed. He numbers and files the application in his office, and returns to the reporter of the subordinate lodge a benefit certificate, signed by the supreme dictator and himself, under the seal of the supreme lodge, and made payable as the member shall have directed in his application; and the subordinate lodge is required to enter upon record the number thereof. It is this benefit certificate which completes the contract relations between the corporation and the members of the subordinate lodges. These benefit certificates contain the only engagement and promise to pay which the member receives from the corporation, and it is designated in the constitutions, laws, and regulations as the document which creates the liability of the corporation to pay the beneficiary therein named according to its terms. The only purpose for which the name of the beneficiary is inserted in the application is to apprise the supreme reporter to whom the benefit is to be paid, that he may insert the name in the benefit certificate. After it is inserted in the certificate, that becomes the guide and controlling document in all future transactions with the member and with the beneficiary. The beneficiary has no present interest, during the life of the member, either in the certificate or fund from which payment is to be made.

The member may at his pleasure, upon complying with the regulations of the supreme lodge, change the beneficiary named in his benefit certificate; and hence the beneficiary named in the application may not be the beneficiary to whom the corporation is obliged to pay. If the benefit certificate be lost or destroyed or beyond the control of the member, he may in writing surrender all claim thereto, and direct a new certificate to be issued to him, payable to the same or other beneficiary, in

accordance with the laws of the order. The issuing of such new benefit certificate shall cancel and render void all previous certificates issued to such member.

A full-rate member may change to a half-rate member; but he must first surrender his benefit certificate, and receive a new half-rate benefit certificate. He may withdraw entirely from the order, and receive a "final card," by paying in full all assessments and dues, and surrendering his benefit certificate.

By article 7, §§ 14, 15, the subordinate lodges, reporters, financial reporters, and treasurers of subordinate lodges, in making remittances for the widow and orphans' fund, in giving notice of assessments, and in collecting and forwarding assessments to the supreme treasurer, are declared to be the agents for the members of their lodges, and shall not be the agents of the supreme lodge. Failure to pay assessments by a member operates as a suspension, and terminates his right, and that of his beneficiary, to any payment from or participation in the widow and orphans' fund.

Likewise any failure or neglect of the subordinate lodge to forward all assessments due from its members to the supreme treasurer before the 10th day of each month operates *ipso facto* to suspend the lodge; and every member of such lodge, after the lapse of 30 days from the recording of such suspension, is precluded from the benefits of said fund. Provision is made for re-instatement within 30 days, but unless it is done in that time no member dying after that time is entitled to any payment from the corporation, unless he held a withdrawal or traveling card, unexpired.

The beneficiary's right to receive anything from the fund provided for widows and orphans arises only on the death of a member, and complying with certain requirements of

the constitutions, laws, and regulations. These requirements are that the member at the time of his death shall have been in good standing in his lodge, and shall have paid all the assessments to the widow and orphans' fund.

Article 7, § 5, provides as follows:

"On the death of a member who has attained the degree of the subordinate lodge, the reporter of his lodge shall immediately forward to the supreme reporter a notice of such death. Such notice must state the number of his benefit certificate, his name and age, the date he was admitted to the degree, the date of his death, the amount he has paid into the widow and orphans' benefit fund, and that he was in good standing, and entitled to the half or the whole of the benefit this order pays, and shall state therein to whom he has directed his benefit to be paid."

Section 12 of article 8 provides as follows:

"Duplicate death notices shall be sent to the State medical examiner by lodge reporters; and it shall be the duty of the state medical examiner to investigate all doubtful cases, and, when the true cause of death is ascertained, forward the notice to the supreme reporter. No order shall be drawn on the W. O. B. fund until the notice of death has been passed upon by the state medical examiner of the grand jurisdiction where such death occurred, whose duty it is hereby made to report thereon without delay."

Section 4, article 3, provides that the supreme reporter—

"Shall, when properly notified by a subordinate lodge reporter of the death of a member entitled to the benefits of the order, within sixty days after the receipt by him of satisfactory proof of the death of a member, draw and attest an order on the supreme treasurer for the amount due on said death, payable to the person or persons designed as beneficiaries in the benefit certificate, and forward the same to the reporter of the subordinate lodge to which such deceased member belonged."

Section 5 of article 3 provides as follows:

"The supreme treasurer shall receive from subordinate

lodges all money for the widow and orphans' benefit fund, * * * and shall pay all orders drawn on him in accordance with the laws of the order. He shall keep a separate account of the widow and orphans' benefit fund, and shall pay out of it no money whatever except upon orders drawn on him for the payment of death benefits."

On January 21, 1887, John Lorscher, then a resident of Millburg, Mich., applied to Bell Lodge, No. 2,143, Knights of Honor, to become a full-rate member of the lodge. He was 37 years of age, and in his written application agreed, in consideration of his being received into the order of the Knights of Honor, and admitted to a, participation in the widow and orphans' benefit fund, he would faithfully obey all the constitutions and laws of the order, in all the departments thereof, and that a compliance on his part with the laws, rules, and regulations then in force or thereafter enacted by the order was the express condition upon which he and his beneficiaries should be entitled to participate in said benefit fund to the extent and amount provided in the constitutions and laws of the order, and that the benefit certificate to be issued to him should have no binding force whatever unless he contributed and continued to contribute his share and portion to the widow and orphans' benefit fund when due and ordered in accordance with the rules and regulations of the order. He directed that his benefit be paid to his wife, Mina Lorscher. He was duly investigated, and examined by the local medical examiner, and such examination was approved by the state medical examiner, and Lorscher was balloted for, elected, and the degree conferred upon him on January 26, 1887. He paid his fees to the lodge, and one dollar to the widow and orphans' benefit fund, to the reporter of Bell Lodge. He died on February 22, 1887.

This action was brought by Mina Lorscher to recover

from the corporation called "The Supreme Lodge Knights of Honor" the sum of $2,000 alleged to be due to her as the beneficiary of said John Lorscher.

The declaration contains three special counts and the common counts. In each of the special counts the plaintiff sets forth the membership of John Lorscher in Bell Lodge, No. 2,143, Knights of Honor, the payment of all fees, dues, and assessments, and in the first and second counts the preparation of a paper in the nature of an assurance of his life, thereby promising to pay plaintiff $2,000 upon his death; avers that she is unable to set this paper forth in full, for the reason that some person or persons connected with the local lodge, unknown to the plaintiff, keep the same away from her.

In the third count the declaration alleges that the defendant is a co-operative beneficiary society, authorized to assure the lives of members of subordinate lodges, and cause assessments to be made to pay such insurance; that Bell Lodge, No. 2,143, Knights of Honor, was such sub-ordinate lodge, authorized to receive members for a certain membership fee, which was, among other things, a premium, and would entitle the member to an insurance upon his life to the amount of $2,000, to be paid on his death to his widow, and thereby make the defendant liable for such sum in the event of the death of said member; that her husband became a member, and paid the membership fee, and she was then and thereby assured by the defendant for the sum of $2,000, and was entitled to receive the same as soon as he died.

The declaration further avers the death of John Lorscher on February 22, 1887, and that the said sum of $2,000, assured to the said John Lorscher, was payable, by the agreement made with him by defendant and its local lodge, to the plaintiff, as soon as he died; avers that she has made all necessary proofs to the defendant, and

its local lodge and officers thereof, of his death, and has requested that it pay said $2,000, which defendant refuses to do, nor does its local and subordinate lodge cause any assessment to be made to pay the plaintiff, nor do they pay, to her injury, etc.

It will readily be seen that the action cannot be maintained under the third count. The constitutions, laws, and regulations enter into and form part of the contract between the corporation and its members. The right of a member or his beneficiary to be paid any part of the fund provided for the benefit of the widow and orphans is governed entirely by his benefit certificate, and the constitutions, laws, and regulations of the order. The agreement of the defendant is not to pay absolutely $2,000 to the beneficiary named, notwithstanding the member has paid his assessment. The agreement is, further, that such assessment shall be paid by the subordinate lodge to the supreme treasurer.

The parties are bound by just such contracts as they have made, which are free from fraud or illegality. Courts cannot make contracts for parties, or render a party liable on a different basis from that upon which his liability was mutually stipulated for. Both the constating act of incorporation and the constitution require, as a condition precedent to payment to the beneficiary, that satisfactory proofs or evidence of the death of the member be furnished to the specified corporate official.

The testimony is returned in full in the record before us, from which it appears that evidence was introduced of the incorporation of defendant corporation under the laws of the state of Missouri; of the application for membership; the examination of the lodge medical examiner, and its approval by the state medical examiner; the records of the lodge, showing that Lorscher was balloted for and elected, and the conferring of the degree upon

him; the payment by him of the lodge fee and assessment for the widow and orphans' benefit fund; his death on the 22d day of February; and the fact that the money had not been paid by defendant to plaintiff.

On the former hearing of this case it did not clearly appear that any benefit certificate had been issued by the supreme lodge, and forwarded to Bell Lodge for Lorscher. It was admitted upon the re-argument of this case, by the counsel for defendant, that the certificate had been executed and forwarded to Bell Lodge, but it refused to hand it over to Lorscher or his wife on account of the fraud set forth in their notice under the plea of the general issue.

This notice asserted that Lorscher had become a member of Bell Lodge, No. 2,143, by fraudulent practices; that in his application he had falsely represented that he had never been addicted to the excessive or intemperate use of malt, alcoholic, or narcotic stimulants, when in fact he was at the time addicted to the excessive and habitual use of hard cider and other intoxicating drinks as a beverage; that he falsely represented that he had never had an habitual cough, or disease of the lungs, or of the stomach, and falsely represented that he was in good health, and free from any symptoms of disease, and there was nothing to his knowledge or belief in his physical condition, family or personal history or habits, tending to shorten his life, which was not distinctly stated in his application.

On the contrary, the defendant asserts that it will show on the trial that Lorscher did have an habitual cough, and did have disease of the lungs and stomach, and was afflicted with pulmonary consumption, and had before that consulted a physician in Chicago, and frequently within a year before he made application he was under the care of physicians at Benton Harbor and Chicago for chronic

sickness, and immediately after his medical examination he was obliged to apply to physicians for medical aid and treatment; and that if he ever had any contract of assurance it was void on account of such fraud; and immediately on the discovery of such fraud by the officers of Bell Lodge they at once sought said Lorscher, to tender him back the fees he had paid, and inform him that they had been deceived and defrauded by him, but said Lorscher was dead before such tender could be made, and such fees were tendered to the plaintiff, and she refused to receive them.

That on account of the false and fraudulent practices towards said Bell Lodge by said Lorscher the supreme lodge refused to issue any papers entitling him to membership, and refused to issue or deliver any "benefit certificate" to him, or to any other person designated by him, or to plaintiff, and for the reasons above stated.

Under this plea and notice the issue between the parties was pretty clearly defined. If the plaintiff succeeded in establishing the contract relations between her husband and the defendant which are usually evidenced by the "benefit certificate," then she would, under her evidence, be entitled to recover, unless such contract was impeached for the fraud set up in the plea, and the burden of proving such fraud was upon the defendant.

Under the constitutions and regulations of the order, when the supreme lodge signs the benefit certificate, and forwards it to the subordinate lodge, the contract is complete. It is the duty of the lodge to deliver it, and it holds it for the member until it is handed over to him. In this case it appears that it had been received by Bell Lodge, but not handed over. The local lodge assumed the right to retain it because of the alleged fraud, and the defendant asserts and relies upon such fraud as a defense to the action. The written contract being in the

possession of the defendant, or under its control, the plaintiff may be excused from producing it at the trial, under the circumstances of this case.

There was testimony enough in the case from which the jury could determine what the contract between Lorscher and defendant was, and, if the certificate contained any special provisions or limitations which did not appear from the constitutions and regulations and other evidence in the case, it was its duty to produce it. Good faith and fair dealing with the beneficiary required the defendant to do this, in view of the provisions of section 4, art. 5, of the constitution governing subordinate lodges, which makes it the duty of the reporter of the subordinate lodge,—

"Immediately on the death of a member of his lodge, to report such death to the supreme reporter and to the grand reporter for statistical purposes, stating the time the deceased received the degree, and the amount paid by him into the widow and orphans' benefit fund, and to make a report to the state medical examiner of the circumstances of the last illness and death of the member, in such form as may be required of him. He shall also forthwith notify the beneficiary or beneficiaries named in the benefit certificate that it is not necessary to employ or pay any person for obtaining payment of the benefit."

Insurance, if it may be so called, of this kind, is usually for the benefit of the widow or other person dependent upon the member in his life-time; and the intention is manifest that the officers of the lodge of which he was a member undertake to make and certify the proofs of death, and to do everything required to place the beneficiary in the possession of the benefit secured by the certificate. It will be presumed that it was done in this case, when the notice given under the general issue sets up the death, and refusal to pay on the ground of fraud. The defendant offered no testimony of the facts set up as

a defense, but insisted that the plaintiff had not made out a case.

The only defect that I perceive is a failure to introduce the benefit certificate in evidence. It is not denied that the benefit certificate was in the usual form of certificates issued by this corporation; and the plaintiff avers in her declaration—

"That there was duly prepared a paper, in the usual form, assuring to him, and to this plaintiff, the said sum of two thousand dollars on occurrence of the death of said John Lorscher."

This explicit averment of the execution of the contract is not denied by the defendant under rule 79 of the circuit court, and therefore its execution is deemed admitted for the purposes of the trial. Such admission by the pleadings was sufficient to support the verdict of the jury, and it would not comport with justice to send the case back for a new trial for the mere formal omission to read the certificate in evidence.

The judgment of the circuit court must be affirmed.

CAMPBELL and LONG, JJ., concurred with CHAMPLIN, J.

SHERWOOD, C. J. The plaintiff brought suit to recover of the defendant $2,000, which she claimed she was entitled to have of the defendant by reason of the death of her husband, who she alleged had made application to become, and was at the time of his death, a member of the order, and had paid all the moneys required of him for that purpose, and to obtain a certificate entitling him to all the benefits of the association.

Defendant is a Missouri corporation. There was a subordinate lodge of the order located at Benton Harbor, in the county of Berrien, called "Bell Lodge, No. 2,143, Knights of Honor." It was in this lodge that Mr. Lorscher became a member, and it was through this lodge

that the defendant did business in the county of Berrien.. The supreme lodge was made up of the several subordinate lodges throughout the country, which constituted the same.

Mr. Lorscher made his application to become a member of the lodge the 21st day of January, 1887, and was admitted about the 26th of the same month. He died February 22, 1887. He complied with all the requirements of the order, and paid all moneys due from him to the order, while he lived, including the charges for the benefit certificate, and there is no pretense but that he was entitled thereto when he died. The application in this case reads as follows:

"Petition for Membership in the Knights of Honor. [Subordinate Lodge Seal.]

"*To the Officers and Members of Bell Lodge, No. 2,143, K. of H.:*

"Having been made acquainted with the objects of your order, and fully indorsing them, I desire to become a full-rate member of your lodge.

"I am of sound bodily health; 37 years of age; was born on the 22d day of July, 1849; weigh 175 pounds; am 5 feet 8½ inches high, and am married; by occupation a blacksmith, and reside at. Millburg, State of Michigan.

"I hereby declare that I have never been expelled from this order; have not within six months been rejected, nor am I now under suspension by any lodge of this order; that I am not now a member of the order.

"I declare and promise that I do not now, nor will I, practice any pernicious habit that tends to shorten life.

"I hereby agree and contract, in consideration of my being received into the order of the Knights of Honor, and admitted to participation in the widow and orphans' benefit fund of the order, that I will faithfully obey all the constitutions and laws of the order, in all the departments thereof, and that compliance on my part with the laws, rules, and regulations now in force, or that may be hereafter enacted by the order, is the express condition upon which I and my beneficiaries are to be entitled to participate in said benefit fund, to the extent and amount provided in the constitution and laws of the order.

"I further agree and contract that the answers I shall make to the questions propounded by the medical examiner, as shown by the medical examiner's blank hereto attached, so far as the facts.

are in my own knowledge, shall be the truth, and, so far as not in my own knowledge, shall be true to the best of my information and belief; and I agree that they shall form the basis of my contract with the said supreme lodge and the said order.

"I further agree and contract that the benefit certificate to be issued to me shall have no binding force whatever unless I contribute and continue to contribute my share and portion to the widow and orphans' benefit fund, when due and ordered in accordance with the rules and regulations of this order.

"I further agree and contract that the payment of the proposition fee, or the entertaining of this application, unless I am duly elected and initiated according to the ritual and laws of the order, does not, and shall not, constitute membership, or give me any of the rights of a member.

"I furthermore agree and contract that if, for any cause as provided by the constitution and laws of the supreme, grand, or subordinate lodge to which I belong, I should be suspended, that I shall not be entitled to any benefit whatever during such suspension; nor shall it be lawful, in case of my death during such suspension, for any of my heirs, devisees, or legatees to receive any benefit or endowment whatever from the supreme or any grand or subordinate lodge of the Knights of Honor; and in case of expulsion from the order I agree to renounce for myself, my heirs and representatives, all the benefits granted by said order.

"I direct that my benefit be paid to my wife, Mina Lorscher.

"Given under my hand at Benton Harbor, State of Michigan, this 21st day of January, 1887.

                                        "JOHN LORSCHER."

The benefit certificate never reached Mr. Lorscher, as appears by the testimony; but upon the argument it was admitted that such certificate was issued, but Lorscher died before it could be delivered, and it was then withheld from plaintiff. It is substantially conceded that the plaintiff is entitled to the benefits of the order, if any one is, under the application, and nothing has ever been paid to her by the order. The defendant denied all liability to the plaintiff from the beginning, and all the time refused payment on that ground.

The fact of death and notice thereof were sufficiently given. The constitutions and general laws of the order were put in evidence; and upon what is therein contained,

and the foregoing facts, the case was heard at the circuit.

The jury rendered a verdict in favor of the plaintiff for the sum of $2,079.33. The defendant brings error.

When the trial closed the defendant asked the court to charge the jury that the defendant was entitled to a verdict on the ground that the plaintiff had shown no contract with the defendant upon which she could recover. The court refused the instruction, and defendant's counsel excepted. The court then submitted the case to the jury upon a general charge as to the law, with the result above stated.

The application for membership in the order contains the contract and promises on the part of the applicant upon which he is to receive the benefits conferred by the order upon its members. It is signed by the applicant; and when received by the order, and has been acted upon, and he has been received into the order by an election, the contract becomes completed between the parties, and is binding upon both, and so long as he complies with its provisions he is entitled to all the benefits it confers. The application when accepted by the subordinate lodge, and the applicant has been admitted to membership, brings him in contract relations with the supreme lodge; and these facts proved entitle the beneficiary named in the contract to have of the defendant all the benefits the contract calls for in case of the death of the applicant. The filing of the application with the supreme lodge only becomes necessary to secure the certificate, which will be evidence of those facts. The promise to pay contained therein is only a repetition of what has been given by its agent, the subordinate lodge, in pursuance of its constitution and the authority therein conferred. It is the existence of the facts which gives the beneficiary the right to benefits, and their existence may be shown by

any competent evidence whenever it shall appear that such certificate has not been made, or, if made, not delivered. Any other conclusion would give more importance to form than substance. This the law will not allow.

The rules made regulating the manner of doing business between the subordinate and superior lodge, in which the applicant does not participate, cannot be made to deprive the beneficiary of her rights, even if omitted or entirely disregarded. She has no control over them. I think the circuit judge was right in refusing the instruction asked.

Section 1, art. 9, of the constitution and general laws of the order, provides that—

"Every lodge shall forward to the supreme reporter all applications for beneficiary membership immediately after the applicant receives the degree, and with each application one dollar to pay for a benefit certificate, and for making record of membership. Each applicant shall enter upon his application the name or names and relationship or dependence of the members of his family, or those dependent upon him, to whom he desires his benefit paid; and the same shall be entered in the benefit certificate according to said direction."

And section 2 says:

"On receipt of the application and fee, the supreme reporter shall enter the name, age, occupation, date of taking the degree, amount of one assessment, and such other facts as may be deemed necessary, upon a register; the roll of each lodge to be kept by itself, and indexed. He shall number and file the application in his office, and return to the reporter of the subordinate lodge a benefit certificate, signed by the supreme dictator and himself, under the seal of the supreme lodge, and made payable as the member shall have directed in his application; and the subordinate lodge shall enter on record the number thereof."

And it further provides, in case of loss of certificate, a

new one may be issued, etc. These provisions relate to the internal business of the order, about which the applicant has no concern to know. It will be noticed, also, that the provisions of neither of these sections make a compliance therewith necessary to carrying into effect the provisions of the contract contained in the application. They are not conditions precedent, and form no part of the applicant's contract. None of them are to be performed by him. These sections relate entirely to the duties of the officers of the subordinate, grand, and supreme lodges; and I find nothing in any of the articles in the general laws or constitutions governing the Knights of Honor invalidating the contract contained in the application if the same is not forwarded to the supreme lodge, and certificate issued thereon.

If any certificate has been issued in this case, it should have been presented upon the trial by the defendant, and, if none had been issued, it was its duty to cause the same to be issued at once. The honor of the order, as well as the law and justice of the case, require this; and under such circumstances it is the duty of courts to see to it that after the voice of the husband has been silenced by death, and he can no longer urge his rights, the order shall not be allowed to break faith with the widow or children, and deprive them of the provisions he had made and paid for while living. I do not think any such results will be reached from a proper construction of the law and rules of the order applicable to the facts in this case.

I find no error in the remaining rulings of the court excepted to, and the judgment ought to be affirmed.

This opinion was written before a rehearing was ordered, which has been had. Nothing, however, has been suggested changing the views I have above expressed.

MORSE, J., concurred with SHERWOOD, C. J.