CASE 8.—ACTION BY GERTIE O'NEAL AGAINST THE SOV-
EREIGN WOODMEN OF THE WORLD ON A CER-
TIFICATE OF LIFE INSURANCE—October 22

# O'Neal v. Sovereign Woodmen of the World

Appeal from Ballard Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for defendant. Plaintiff appeals.—Re-
versed.

1. Insurance—Mutual Benefit Society—Initiation—Regularity—
   Estoppel.—Decedent's certificate of membership having been
   received by the local camp of defendant society, decedent
   was directed to appear for required initiation, when a mistake
   in the number of the local camp in the certificate was dis-
   covered. It was then decided to proceed with the initiation,
   which was done, the certificate being returned by the clerk
   for correction. Decedent paid all the required fees and dues,
   was accepted and recognized as a member of the order until
   his death, before the corrected certificate had been returned
   and delivered to him, and was buried by the order as a
   regular member in full fellowship and good standing. Held,
   that the order was estopped to question the regularity of
   the initiation.

2. Insurance — Constitution — Construction—"In Person."— The
   words "in person," used in the constitution of a mutual
   benefit society directing that there shall be no liability until
   the insured shall have had delivered to him "in person" his
   beneficiary certificate while in good health, was not synony-
   mous with "manual possession," so as to require that the
   certificate be actually placed in insured's hands to constitute
   a legal delivery, but was merely intended to require a delivery
   to insured himself, and not to another for him.

3. Insurance—Mutual Benefit Certificate—Delivery—Evidence.—
   A certificate issued to insured on his application was re-
   ceived by the clerk of insured's local camp, when a mistake

O'Neal v. Sovereign Woodmen of the World.

in the number of the camp was discovered. Insured was directed to appear for initiation, and was regularly initiated, and paid all the dues and assessments, but the clerk returned the certificate to the sovereign camp for correction, and, before a corrected certificate was returned and delivered to insured, he was killed. Held that, when insured was initiated and had paid the dues, the clerk held the original certificate, which was a valid instrument notwithstanding the error, for him and that such acts constituted a delivery of the original certificate to assured personally as required by the society's constitution in order to initiate defendant's liability.

ROBBINS & THOMAS for appellant.

J. E. BRIDGEWATER of counsel.

## AUTHORITIES CITED.

American Guild v. Wyatt, 100 S. W., 266; Southwestern Mutual ife Ins. Co. v. Joseph, 103 Southwestern, 317; Page on Contract, 52; Mutual Life Insurance Co. of New York v. Thompson, 14 Ky. Law Rep., 1400; Carter v. Hibbard, 83 S. W., 112; Hutcheson v. Blakeman, 3 Metcalf, 80; Chiles v. Nelson, 7 Dana, 281; Sanders v. Fruit Co., 144 N. Y., 209; Same Case, 29 L. R. A., 431; Conn. Indemnity Co. v. Grogan, 25 Ky. Law Rep., 717; Lee v. Union Central Life Ins. Co., 19 Ky. Law Rep., 608; Fidelity and Casualty Co. v. Ballard, 20 Ky. Law Rep., 1169; Insurance Co. v. Rowe, 20 Ky. Law Rep., 1473.)

REEVES & THARP for appellee.

## AUTHORITIES CITED.

McLendon v. The Woodmen of the World, Supreme Court of Tennessee decided in 1901, 64 S. W., 36; Fitz Maurice v. Mutual Life Ins. Co. of New York; Dickerson's Admr., &c. v. Providence Savings Life Assurance Society, 52 S. W., 825; National Mutual Benefit Association v. Hickman and others, 5 S. W., 565.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

This action was instituted in the Ballard circuit court by the appellant, as the widow of J. P. O'Neal, on the 15th day of December, 1904, seeking to recover from the appellee, Sovereign Woodmen of the World, the sum of $500 which she claims is due her as beneficiary in a certificate of life insurance alleged to have been issued by the appellee through its local camp at Bandana, Ky., upon the life of her deceased husband. The sum named in the certificate is $1,000, but by its terms, where the insured dies within a year from the date of the policy, the sum to which the beneficiary is entitled is one-half the amount named in the certificate, or $500. There were several amendments, but we may pass the question of the allegations of the petition by saying that, as a whole, it states a cause of action in the plaintiff against the defendant. The defendant, by its answer, denied all the material allegations of the petition, and especially that he was a member of the lodge, or that any certificate had ever been delivered to him; and there is no question but what its allegations, if true, interposed a valid defense to a recovery by plaintiff. When the case came on for trial, after the plaintiff's evidence was all in, the defendant moved the court to award it a peremptory instruction to the jury to find a verdict in its favor. This motion was sustained, and, under the peremptory instruction of the court, the jury awarded a verdict in favor of the defendant. From the judgment dismissing her petition, the plaintiff now appeals.

The appellee, Sovereign Woodmen of the World,

is a fraternal order authorized to issue policies of insurance on the lives of its members. The insurance feature is not substantially different in principle from the ordinary fraternal insurance. On August 14, 1904, Joseph P. O'Neal made application for membership and participation in the beneficiary fund of the Woodmen of the World. This application was in writing, and was obtained by a properly authorized officer of the order, one J. N. Helsley, to whom the applicant paid all of the necessary dues in order to obtain an insurance policy of $1,000 on his life. The application was duly forwarded to the Sovereign Camp, where it was approved and a policy issued, by which the appellee agreed to pay to the wife of the applicant $500 should his death occur during the first year of his membership, $750 should his death occur during the second year of his membership, and $1,000 should his death occur after the second year of his membership. The beneficiary certificate was forwarded to Bandana Camp No. 32, located at Bandana, Ky., for delivery to the applicant whenever he should become a member by being regularly initiated into the order and have paid all dues necessary to his proper initiation.

We do not feel it is necessary to set forth with any greater particularity the contents of the application for insurance, or the certificate which was issued in pursuance of the application. The real defense to liability is based upon the alleged fact that the certificate was never delivered personally to the applicant during his lifetime. After the certificate was issued and forwarded to the clerk of Bandana Camp No. 32, the applicant was notified to be on hand for initiation into the order, and at the proper time he was present and was initiated, thereby becoming a

member. At this time the certificate which had been duly and legally issued was in the hands of the clerk of the local camp for the purpose of delivery to the applicant when he should be lawfully obligated as a Sovereign Woodman of the World. Just prior to the initiation of the applicant, the clerk, who had the policy, observed that the number of the local camp was not stated correctly in the certificate, it being stated as No. 31, when it should have been No. 32, and he was of opinion that the policy would have to be returned to the Sovereign Camp for correction of this minute error, and the question was then raised in the lodge as to whether or not, under these circumstance, it would be lawful to initiate the applicant. The regular presiding officer was of opinion that it would not be lawful, but the district deputy, Helsley, took the position that the certificate had been issued and the applicant was present, ready for initiation, and therefore he should be initiated. After some debate the lodge acquiesced in this view, the regular officer left the chair, and Helsley presided, and from this point on it is not denied that the initiation was in all respects regular and in accordance with the constitution and by-laws of the order. Although the clerk was of opinion that he should return the certificate to the Sovereign Camp for the correction of the error in the number of Bandana Camp, still he required and the applicant did pay over to him all dues which were necessary to be paid in order to entitle him to the possession and ownership of the certificate. And then, with the acquiescence (at least) of the insured, the policy was returned by the clerk for the correction of the error above mentioned. Before it was returned, corrected, to the clerk, O'Neal had been killed by the falling of a tree upon him.

The appellee's defense is based upon the following stipulation contained in the application for membership and insurance in the order: "I agree to pay all assessments and dues for which I may become liable while a member of the order, as required by its constitution and laws, and that the liability of the Sovereign Camp for the payment of benefits shall not begin until after this application shall have been accepted by a Sovereign physician, a beneficiary certificate issued thereon and personally delivered to me by an authorized person while I am in good health, until I shall have been obligated in due form and all the requirements of section 58 of the constitution and laws of said order have been complied with." Section 58, above referred to, is as follows: "The liability of the Sovereign Camp for the payment of benefits on the death of a member shall not begin until after his application shall have been accepted by a Sovereign physician, his certificate issued, and he shall have: First. Paid all entrance fees. Second. Paid one or more advance monthly payments of assessments and dues known as 'Sovereign Camp Fund.' Third. Paid the physician for medical examination. Fourth. Been obligated or introduced by a camp or by an authorized deputy in due form. Fifth. Had delivered to him, in person, his beneficiary certificate while in good health. The foregoing are hereby made a part of the consideration for, and are conditions precedent to, the liability for the payment of benefits in case of death." It is not disputed (and, if it is, the evidence abundantly establishes it) that the applicant complied with all the provisions of section 58, except Nos. 4 and 5. The fourth, it seems to us, may be very readily disposed of. Whatever may be said as to the technical regularity of the initiation, there can be no dis-

pute that it took place, and that the members of the lodge accepted it as regular and recognized the insured as a member of the order from that time on until his death; and, when he was killed, he was buried by the order in due form as a regular member in full fellowship and good standing. It seems to us entirely too late, after all of this was done, to question the regularity of the initiation. We think it was regular.

This leaves remaining only the question as to whether or not the certificate was delivered to the insured while in good health; and it may be conceded (for the purposes of this case only) that, unless the certificate was delivered to the insured in person, appellant, as beneficiary, has no cause of action against appellee. Was the certificate delivered to the insured in person while in good health? Because the constitution of the order requires that the delivery of the certificate shall be made to the insured in person while in good health, counsel for appellee have assumed that the words "in person" are synonymous with "manual possession" and that, therefore, the certificate was required actually to be placed in the hands of the insured before there could be a legal delivery. We can not subscribe to this construction. There is no hard and fast rule as to what constitutes a legal delivery of a writing. We think the words "in person" were placed in the constitution in order that the delivery should be to the insured himself, and not to another for him. It is a well-settled rule that the delivery of a deed to A. for B. is a valid delivery; and it has often been held that the placing of insurance policies or deeds in the mail, directed to those for whom intended, was a valid delivery, and therefore the words "in person" were inserted after the word "delivered" to cut off such delivery as that of

which we are speaking, and confine it to the insured in person. But it does not follow from this that it was intended to require that the certificate should be placed in the hands or actual physical possession of the insured. Such a possession has never been required as to deeds or other instruments which require delivery in order to be effective. The contrary of this is well settled in Kentucky. In the case of Bunnell, etc., v. Bunnell, 111 Ky. 566, 64 S. W. 424, 23 Ky. Law Rep. 800, 1101, we said on this subject: "So far, we have considered this question as if an actual manual delivery of the deeds was necessary. But such is not the law. No particular form of procedure is required to effect a delivery. It is not essential that the paper be actually transferred. If the grantor, when executing it, intends it as a delivery, and this is known to and understood by the grantee, and they treat the estate as having actually passed thereby, it will have that effect, though the instrument be left in the possession of the bargainor. (Authorities omitted.) Delivery may be shown by acts without words, or words without acts, or by both combined." And in Shoptaw, etc., v. Ridgway's Admr., 60 S. W. 723, 22 Ky. Law Rep. 1495, it was said: "But a manual delivery of the deed is not required, nor is the acceptance of the bodily possession of the paper itself. This delivery may be shown by acts without words, or words without acts, or by both combined. And possession by the grantee of the thing conveyed is persuasive evidence of such previous delivery. Hughes v. Easten, 4 J. J. Marsh. 572, 20 Am. Dec. 230." To the same effect is Hudson v. Redford, 67 S. W. 35, 23 Ky. Law Rep. 2347. It follows from this that whether or not there has been a legal delivery of an instrument is a question of intent, and we think

that it can not be asserted as a principle of law that what took place between the officers and members of Bandana Camp and the insured in regard to the certificate under discussion did not amount to a delivery of the certificate herein sued on within the meaning of the constitution of the order. It may be assumed that the insured did not take manual possession of the certificate, but he had done everything that was required of him to entitle him to a delivery of it, and the camp had regularly initiated him in order that it could be delivered to him. He had paid all that was required, and the money has never been returned. The mere fact that the clerk was of opinion that the insignificant error in regard to the number of the lodge being corrected required that the certificate should be sent back to the Sovereign Camp for this purpose did not militate against the delivery being completed prior to its return for the correction. No one would assert that the correction was necessary to the validity of the certificate. If the error had not been discovered, and the certificate had been taken away by the insured, no one would for a moment contend that this slight error would in any degree invalidate the instrument as an insurance policy. The certificate for all legal purposes was a valid instrument; and, if it was intended by the lodge by what was done that it should be delivered to the insured, then the latter was entitled to possession, and the mere fact that he permitted the clerk to return the certificate to the Sovereign Camp for correction of the number of the subordinate camp can not be said as a matter of law to show that there was not a personal delivery. When the insured had paid all dues and had been initiated into the order, the clerk held the certificate for him. He had by his conduct accepted

it personally, and the clerk in returning it for the correction of the number of the camp returned it for him. It was his certificate, just as fully as it would have been if nothing had been said about the error in the number of the camp.

We think the trial court erred in awarding a peremptory instruction to the jury to find for the defendant under the circumstances and facts herein detailed, and the judgment is therefore reversed for a new trial under principles consistent with this opinion.