Argued Dec. 21, 1909, decided January 11; rehearing denied June 7, 1910.

## LATHROP v. MODERN WOODMEN OF AMERICA.

[106 Pac. 328; 109 Pac. 81.]

INSURANCE—MUTUAL BENEFIT INSURANCE—CONTRACT—DELIVERY.

1. Where a by-law of a beneficial association made a part of the contract provided that the certificate should not become effective until delivered by the Camp Clerk to the applicant while in good health, such delivery was a condition precedent to the effectiveness of the certificate, and hence a delivery by the head office to the Camp Clerk is not a delivery to the applicant.

INSURANCE—BY-LAWS—WAIVER.

2. By-laws of a beneficial association expressly providing that no local camp or any officer thereof shall waive any provisions of such by-laws are binding and render an attempted waiver illegal.

INSURANCE — MUTUAL BENEFIT INSURANCE CONTRACT — LIABILITIES — PERFORMANCE OF CONDITIONS.

3. Where the by-laws of a beneficial association provided that the certificate should not be effective until delivered to the applicant while in good health, and his adoption, into the order, and his payment of dues and assessments, the failure of an applicant to pay, while in good health and before the accident, the dues and assessments, defeated a recovery on the certificate, and a payment after the accident to the local Clerk was not binding on the association, in the absence of a showing that it had knowledge thereof and acquiesced therein.

From Josephine: HIERO K. HANNA, Judge.

Statement of MR. JUSTICE MCBRIDE.

This is an action by Nina B. Lathrop against the Modern Woodmen of America, an incorporated fraternal and beneficiary organization, having its head office and place of business, called a "Head Camp," in the State of Illinois,

and a subordinate council or camp at Grants Pass, Oregon. One of the declared objects of the organization was to promote fraternal relations among its members during life, and to furnish aid and indemnity to the beneficiaries of a certain class of members, called "beneficial members," after the death of such members. The organization was conducted by means of a Head Camp, presided over by an officer called a Head Consul and having a Head Clerk and other officers, and of local camps, having Consuls, Clerks, and other officers. Members were admitted in the local camps by an initiation ceremony called "adoption," and the general method of becoming a member was not essentially different from that used in the various lodges and fraternal societies which abound in this country. There were two classes of members, "social members" and "beneficial members." The social membership entitled a person adopted into the society to a participation in its meetings, the use of its passwords, and the general social privileges accorded to members of like fraternal organizations. Beneficial membership was a privilege accorded to persons elected to social membership upon their passing a proper physical examination, similar to that required of applicants for insurance in an ordinary insurance company. If the applicant passed a suitable examination, and his application was approved, a benefit certificate, which was in effect an insurance policy, was issued from the Head Camp and sent by it to the clerk of the local camp for delivery to the applicant. If not so delivered within sixty days, it was returned to the Head Camp. The by-laws of the society are expressly referred to in all applications for beneficial membership and in all benefit certificates issued; a copy of the application being attached to and made a part of such certificates. Section 27 of the by-laws provides for the examination of the applicant by the Camp Physician, which, if favorable to the applicant, is for-

warded to the Head Physician. Section 28 provides that, if the Head Physician shall approve the application, he shall forward the same to the Head Clerk, who shall, subject to the provisions of the by-laws, forthwith issue a certificate, which shall be signed by the Head Consul and Head Clerk and have attached thereto a copy of the application.

Section 30 of the by-laws, is in part, as follows:

"Upon receipt of the benefit certificate, the local Clerk shall notify the applicant, and he shall be adopted by the Camp at the next or some regular or special meeting occurring at the Camp hall within sixty days after the issuance of such certificate, but such certificate shall not be of force or effect until said adoption ceremony shall have been performed, nor shall the adoption of such applicant take place until the benefit certificate shall be in the hands of the Camp Clerk. Provided, however, that at any time after the election to beneficial membership, and before the issuance of a benefit certificate, the applicant may, if he so desires, be adopted as a social member, and if thereafter a benefit certificate shall be issued pursuant to such application such benefit certificate shall not become effective until delivered by the Camp Clerk to the applicant when in good health, nor unless delivered within sixty days after date thereof."

Section 39 is as follows:

"The liability of this society for the payment of benefits upon the death of a beneficial member shall not begin until he shall have been adopted, nor until he shall have performed all acts and complied with all of the requirements prescribed in these by-laws, and shall have taken the obligations prescribed in the ritual; nor until all acts herein prescribed for the local Camp shall have been fully complied with by it, nor until the application shall have been duly recommended by the Camp Physician and approved by the Head Physician and the Supreme Medical Directors, and a benefit certificate issued as provided in Section 28 hereof, and delivered to the applicant while in good health. * *"

Section 40 is as follows:

"No officer of this society, except as provided in Section 107 hereof, nor any local Camp officer, is authorized or permitted to waive any of the provisions of the by-laws of this Society which relate to the contract between the members and the society. * *"

Section 260 is as follows:

"No local Camp, nor any of the officers thereof, shall have the right or power to waive any of the provisions of the by-laws of this society."

The complaint alleged: That on October 26, 1906, Charles M. Lathrop applied for membership in the defendant organization through its subordinate council in Josephine County and was duly adopted a member of said order; that about November 8, 1906, the defendant executed unto said Charles M. Lathrop its benefit certificate in writing, naming Nina B. Lathrop, his wife, as the beneficiary therein. The benefit certificate and by-laws of the order were made a part of the complaint. The complaint further alleged compliance by said Lathrop with all the conditions and provisions of said benefit certificate, and the regulations, rules, and by-laws of defendant; that Lathrop died on November 25, 1906; that plaintiff had made the necessary proofs of death to entitle her to receive the amount stipulated in said certificate to be paid, namely, $3,000.

A demurrer to the complaint having been overruled, defendant answered, admitting that deceased made application for membership in the defendant organization, and that pursuant to said application defendant issued the benefit certificate described in the complaint, to be delivered to deceased in accordance with its by-laws. Defendant expressly denied that said benefit certificate ever came into force and effect or was ever delivered to deceased. Defendant further answered, setting up in detail its charter as a fraternal beneficiary society, not

conducted for profit and having a lodge system and ritualistic work, setting forth the application of deceased and Section 30 of its by-laws, hereinbefore quoted, and alleged:

That on November 8, 1906, a benefit certificate was issued and transmitted to the Camp Clerk at Grants Pass for delivery under the by-laws of defendant. That deceased was notified on or about November 13, 1906, of the arrival of said certificate and was requested to pay assessments thereon and dues due the Camp, and to receive and accept said benefit certificate, but that he forever neglected to either pay said assessments or dues or to receive or accept said benefit certificate. That on the 21st day of November, 1906, and while said certificate was still in the hands of the Camp Clerk, and before any delivery at all of said certificate, and before the payment of the assessment and dues payable upon the delivery of said certificate, and before said deceased had ever seen or accepted said certificate, he was mortally injured by an explosion and remained in an unconscious condition until November 26, 1906, at which time he died. That on November 23, 1906, two days after said injury, the son of the said Charles M. Lathrop called on the said Camp Clerk, paid $2.55 on assessment and fifty cents dues, and the said Camp Clerk then and there, in violation of the by-laws of said defendant, surrendered the possession of the said certificate to the said son, without the knowledge or consent of this defendant. That the statement signed by the Consul of Grants Pass Camp to the effect that Charles M. Lathrop was adopted and the certificate delivered to him on November 13, 1906, was and is false and fraudulent. That the said certificate was signed by the Consul of said Grants Pass Camp on November 23, 1906, at Grants Pass, Oregon, and the same was then and there given to the son of the said Charles M. Lathrop. The defendant further alleged: That, as soon as it had

knowledge of the receipt by the Camp Clerk of said assessment and dues, it declined the same, and immediately and prior to the commencement of this action caused to be made a legal tender in the sum of $8.05, being the amount paid for adoption fee and the said assessment and dues, to the plaintiff herein, as the legal representative of the said Charles M. Lathrop; that the sum of $8.05 is the total amount of all moneys paid by the said Charles M. Lathrop, or by any one for him, by reason of the alleged and attempted delivery of the said benefit certificate herein sued upon; that this defendant herewith renews said tender in the sum of $8.05 to the said Nina B. Lathrop as the legal representative of the said Charles M. Lathrop, and herewith deposits with the Clerk of this court the sum of $8.05, which is hereby tendered to the said Nina B. Lathrop as the legal representative of the said Charles M. Lathrop.

The reply put in issue the material new matter in the answer.

On the trial, it was conceded that the proper proof of death had been furnished, and that the defendant repudiated the claim under the policy, on the ground that it never went into effect, and that the money paid to the local Camp had been tendered back. Counsel for plaintiff offered in evidence the benefit certificate and application attached, to which defendant objected on the ground that it had not been shown that it was accepted by the insured or delivered to him while he was in good health and the assessment paid, which objection was overruled and exception taken. Defendant then moved for a nonsuit, which was denied. An attempt was then made by defendant to show by evidence: That the certificate in question was not delivered to deceased on the 13th day of November, 1906; that the memorandum to that effect at the bottom of the first page thereof, purporting to be signed by Marcus W. Robbins and Fred W. Reynolds, was a mis-

take, and put there by the Clerk, so far as everything but the signature of Reynolds was concerned, on the expectation that deceased would be at the lodge on the night of the 13th and would then pay his assessment, sign the acceptance of the certificate on its face, and receive it; that as a matter of fact he did not attend that night and did not receive the policy then, or ever, in person; that on the 21st day of November, 1906, he was fatally injured by an explosion of a blast, crushing the frontal portion of the face and causing a fracture of the base of the skull, and from that time until his death he was in an unconscious condition; that on November 23rd a son of the deceased came to Robbins, the Camp Clerk, paid the assessment and some dues that were demanded, and asked for the certificate; that Robbins objected, to some extent, to giving up the certificate, on the ground that the applicant for the certificate was not in good health, but finally gave it to the son, who took it away. Defendant attempted to prove, and offered to show, that Reynolds, the Consul, never signed his name on the certificate until the 23rd of November. Defendant also introduced a witness, Turner, and offered to show by him that he was present about the 16th of November, 1906, when the local District Deputy of defendant society had a conversation with deceased, in which the Deputy suggested to deceased that he ought to go and pay up his assessment and get his certificate, which suggestion was answered to the effect that he was not going to die yet, and that he was busy, but would come on the next meeting night. All the foregoing testimony was rejected and exception taken and allowed. The court then directed a verdict for plaintiff, upon which plaintiff had judgment for $3,000. The defendant appeals.    REVERSED.

For appellant there was a brief over the names of *Mr. E. D. Briggs* and *Mr. Benj. D. Smith* with an oral argument by *Mr. Briggs*.

For respondent there was a brief and an oral argument by *Mr. H. D. Norton.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The evidence proffered by the defendant and excluded by the court below tended to show that the benefit certificate was forwarded to the Clerk of the local Camp of Woodmen, and that deceased, after having obtained knowledge of that fact, postponed accepting it, and that it remained in the custody of the Clerk, pending delivery, until he was mortally injured, and then it was delivered to his son. We are of the opinion that the rejection of this testimony was error. As will be seen from the foregoing statement, the by-laws of defendant are a part of the contract of insurance, being expressly referred to and practically made a part of the application of deceased. Section 30 of said by-laws provides, among other things, that the benefit certificate "shall not become effective until delivered, by the Camp Clerk, to the applicant while in good health." This is what the parties agreed should be a good, effective delivery. To say that the certificate became effective as soon as it reached the Camp Clerk is to say that a delivery by the head office to the Camp Clerk is a delivery by the Camp Clerk to the applicant, which is a perversion of plain language, which wipes Section 30 of the by-laws out of existence. There are many authorities to the effect that the issuing and mailing of a policy by a life insurance company to its local agent with the intent that it shall be unconditionally delivered to the insured constitutes a delivery of the policy: *New York Life Ins. Co.* v. *Babcock,* 104 Ga. 67 (30 S. E. 273: 42 L. R. A. 88: 69 Am. St. Rep. 134); *Kilborn* v. *Prudential Ins. Co.* (Minn.), 108 N. W. 861; *Yonge* v. *Equitable Life Assurance Society,* 30 Fed. 902. Such has been the holding of this court in *Francis* v. *Mutual Life Ins. Co.* 55 Or. 280 (106 Pac. 323). But

these cases turn upon the theory of the intent that the policy shall be unconditionally delivered, and that the parties have not stipulated for anything else as a condition precedent to the policy taking effect, and are readily distinguishable from a case of this kind, where the contract in its inception states just what shall be done and how the policy shall be delivered in order to make it binding and effective. So it has been held with practical unanimity that, in policies issued by fraternal beneficiary societies, requirements of the character above indicated are conditions precedent and a part of the contract of insurance and will be enforced accordingly: Niblack, Ins., § 139; *McLendon* v. *Woodmen of the World,* 106 Tenn. 695 (64 S. W. 36: 52 L. R. A. 444); *Kohen* v. *Mutual Reserve Fund Life Ass'n* (C. C.) 28 Fed. 705; *Michigan Mutual Life Ins. Co.* v. *Thompson* (Ind. App.) 86 N. E. 503; *Wilcox* v. *Sovereign Camp W. O. W.,* 76 Mo. App. 573. Nor can the officers of the local Camp waive the conditions imposed by the by-laws: *Borgraefe* v. *Knights & Ladies of Honor,* 22 Mo. App. 127; *Loyd* v. *Modern Woodmen of America,* 113 Mo. App. 19 (87 S. W. 530); *Sterling* v. *Head Camp W. O. W.,* 28 Utah 505 (80 Pac. 375).

2. Sections 40 and 260 of the by-laws of the defendant society expressly provide that no local Camp, nor any officer thereof, shall be permitted to waive any of the provisions of the by-laws of the society. While we greatly regret that the delay of deceased, as indicated by the evidence proffered, may have been the cause of depriving his widow of a sum of money which a delivery of his certificate would have assured her, we cannot allow our sympathy for her to induce us to ignore the express conditions of the contract upon which the certificate, under which plaintiff claims, was to become effective.

The judgment is reversed, and a new trial ordered.

REVERSED.

Decided June 7, 1910.

## On Petition for Rehearing.
[109 Pac. 81.]

Mr. Justice King delivered the opinion of the court.

3. After a careful re-examination of the points involved, we are unable to reach a conclusion different from that announced in the former opinion. Although the reasons there given are sustained by eminent authority, the writer does not fully concur therewith, but is in accord with the views announced in *Wagner* v. *Knights of Honor*, 128 Mich. 660, 668 (87 N. W. 903) in which it is held that a manual delivery of the policy is not a condition precedent to its enforcement, and that the failure of the adoption of the applicant into the order prior to the accident, being a mere formal matter, is waived by the issuance of the policy and remission thereof to the local clerk. Holding to the same effect are *Lorscher* v. *Knights of Honor*, 72 Mich. 316, 328 (40 N. W. 545: 2 L. R. A. 206) ; *Pledger* v. *Woodmen of the World*, 17 Tex. Civ. App. 18 (42 S. W. 653) ; *Sovereign Camp W. O. W.* v. *Dees*, 45 Tex. Civ. App. 318 (100 S. W. 866) ; *Sovereign Camp W. O. W.* v. *Brown*, 88 S. W. 372; *O'Neal* v. *Sovereign Camp W. O. W.*, 130 Ky. 68 (113 S. W. 52) ; *Tracy* v. *Supreme Court of Honor*, 4 Neb. (Unof.) 189, (93 N. W. 702.)

The failure, however, on the part of the applicant to comply with the rules of the order, in not paying, while in good health and prior to his accident, the assessments and dues, is fatal to plaintiff's right to recover. The payment thereof to the local clerk after the casualty in no way bound the Head Camp, without a showing first being made to the effect that it had knowledge thereof and acquiesced therein. It is settled in this State, as well as in most jurisdictions, that, in the absence of some showing of ratification by the principal, it is only when an

Sig. 15

agent acts therefor, and within the scope of such authority, that his acts may affect or bind such principal. *Whigham* v. *Independent Foresters,* 44 Or. 543 (75 Pac. 1067) ; 51 Or. 489 (94 Pac. 968) ; *Miller* v. *Head Camp,* 45 Or. 193 (77 Pac. 83.) The receipt by the local clerk, or agent, of the policy, cannot be held to be an unconditional delivery to the applicant; for, in addition to the requirement that he be adopted into the order, it was further required that he pay his dues and assessments. Had these payment been made prior to the accident, then, under the authorities above cited, the Camp would, in the opinion of the writer, have been liable. But that it may not be responsible, under the circumstances presented by the rejected testimony, is fully sustained by the United States Circuit Court of Appeals in *Modern Woodmen of America* v. *Tevis,* 54 C. C. A. 293 (117 Fed. 369.) That case was previously before the court, and the views there announced were substantially in accord with plaintiff's contention herein. See *Modern Woodmen of America* v. *Tevis,* 49 C. C. A. 256 (111 Fed. 113.) On petition for rehearing, however, the result there declared, in an able and exhaustive opinion by Judges SANBORN and THAYER, was reversed, in the outset of which it is remarked that the first opinion was based on the conclusion reached in *Knights of Pythias* v. *Withers,* 177 U. S. 260 (20 Sup. Ct. 611: 44 L. Ed. 762), but that a rehearing was granted on the strength of the holding in *Northern Assurance Co.* v. *Grand View Bldg. Ass'n,* 183 U. S. 308 (22 Sup. Ct. 133: 46 L. Ed. 213), and after a careful review of the principles involved, including numerous authorities bearing thereon, held as above indicated— that the beneficiary of the insured could not recover.

While the result in the case at hand may not be in harmony with the assumed benevolent objects of the order, plaintiff's position, under the evidence offered and law applicable thereto, is untenable; and it being our

official function to interpret laws, and not to make them, it follows that the petition for rehearing must be denied, and it is so ordered.

Reversed:    Rehearing Denied.