Argued February 27, decided April 7, 1908.

## WHIGHAM v. INDEPENDENT FORESTERS

·[94. Pac. 968.]

Insurance—Mutual Benefit Societies—Applications—Warranties —Breach—Estoppel—Notice to Agent.

1. It is only when an agent is acting for his principal and within the scope of his authority that notice to the agent of matters that would affect his principal is binding upon the latter, and hence a mutual benefit order was not estopped to declare a forfeiture for breach of warranty consisting of false statements made in a member's application, because the lodge physician before whom the answers were made, while subsequently treating the applicant professionally and not in connection with his lodge duties, acquired information amounting to notice that answers in the application were false.

Same — False Statements in Application — Notice of Falsity — Evidence.

Evidence examined, and *held* not to show that a subordinate lodge or any member or officer thereof knew at the time a member was admitted, that his answers to the medical examiner were false, so as to estop the order to declare a forfeiture of the certificate for breach of warranty.

From Multnomah: Arthur L. Frazer, Judge.

This is an action by Marie Stewart Whigham against the Supreme Court of the Independent Order of Foresters, to recover the amount on a beneficial certificate issued by the defendant to William Whigham, deceased, husband of the plaintiff. From a judgment in favor of the plaintiff, the defendant appeals.    Reversed.

For appellant there was a brief and an oral argument by *Mr. John H. Hall.*

For respondent there was a brief over the names of *Mr. V. K. Strode* and *Mr. Henry E. McGinn,* with an oral argument by *Mr. Strode.*

Per Curiam.    This is an appeal by the defendant, the Supreme Court of the Independent Order of Foresters, a corporation organized as a fraternal society, from a judgment rendered against it in favor of the plaintiff, Marie Stewart Whigham, the beneficiary named in a life insurance certificate issued by the defendant to her husband, William Whigham, now deceased.    A former judgment in this action was reversed because no evidence had been offered to show that either Court Pacific, No. 1,247,

the defendant's local lodge at Portland, Or., or its officers or members knew, at the time Whigham was admitted to the order that his answers to questions asked at his medical examination were false, wherein he stated in writing that he did not use vinous, spirituous, or malt liquors, and that for five years prior to the inquiry, he had not been intoxicated, and his habit in relation to the use of alcoholic drinks during his life had been temperate, or that knowledge of his misrepresentations had been brought home to the local lodge or its officers after Whigham's initiation. The facts of the case are stated in a previous opinion, in which the thought is expressed that, as the defect in the testimony might be overcome, a new trial should be had: *Whigham* v. *Independent Foresters,* 44 Or. 543 (75 Pac. 1067).

1. The chief errors now assigned are the failure of the court to grant a judgment of nonsuit, and its refusal to instruct the jury to find for the defendant. We have carefully examined the testimony given at the last trial, and cannot find that the imperfections pointed out in the former opinion have been remedied. It appears that Whigham applied to the executive council of the defendant for membership in the order and for a benefit certificate, and thereupon appeared before J. D. Fenton, M. D., a physician duly appointed by the defendant, and in answer to questions relating to his health and habits, made material false statements which he certified were true, and also stipulated that they should form a part of the contract for insurance. Dr. Fenton, as a witness, testified that he sent the paper containing Whigham's answers directly to the supreme physician of the order at Toronto, Canada, that at that time he had no knowledge that the answers were false, and that after Whigham was admitted to the society the witness treated him professionally for alcoholism.

It satisfactorily appears that after Whigham was initiated the officers and members of Court Pacific knew

he was using intoxicants to such an extent as to materially affect the risk upon his life, and also knew that the rules of the order, which were binding alike upon him and them, made it their duty to report the fact to the defendant's superior officer, who, if he was satisfied of the truth of the charge, should have suspended Whigham; but no complaint was made against him. The answer to the complaint does not place the defendant's alleged exemption from liability on Whigham's use of intoxicants after he was admitted to the order, but the defense is based upon the written false answers given at his medical examination, which were by the terms of the contract made warranties. This averment makes it unnecessary to consider whether or not a waiver arises from the knowledge possessed by the officers and members of Court Pacific of Whigham's excessive indulgence in alcoholic drinks, which information they acquired after he was initiated, and which fact they failed to report to the supreme chief ranger. When the former judgment was reversed, the cause was remanded that evidence might be obtained of the information which the local lodge or its officers or members may have procured in relation to Whigham's false answers at the time he became a member of the order, or that testimony might be offered to show that knowledge of his misstatements had been brought home to the local lodge or its officers after his admission. One of the questions for consideration at the last trial was the knowledge of the falsity of Whigham's answers, either before or after he became a member of Court Pacific. As far as disclosed by the testimony, Dr. Fenton is the only member of the local lodge who knew what answers had been made by Whigham to the questions asked at the medical examination, until after this action was commenced, when the papers were probably returned from the head office of the order to be used at the trial.

2. J. D. Phillips, a member of Court Pacific, who indorsed Whigham's petition for admission into the order,

testified that at that time he knew that the applicant had been addicted to the use of intoxicating liquors, and that, to desist from the habit, Whigham had taken the Keeley treatment about a year before he was initiated into the society; that, when his petition was received, the witness, at a recess of the order, stated these facts at the secretary's table in the presence of several members, whom he advised that, if they did not find that Whigham had reformed, he could be kept out of the order; that thereafter Frank Legrande, the financial secretary of the local lodge, in speaking to the witness of Whigham's excessive drinking after he was initiated, said, "He must have made false answers in his application for membership," to which Phillips replied, "I suppose he must have, or he wouldn't have got in," further saying, "I knew the questions which were asked me—and they were the same in every case—were asked of every member who went into the order, and there was one question there, 'Have you been drunk inside of five years, and what has been your habits of life regarding temperance?' and, if Mr. Whigham had stated he had been drinking and addicted to alcohol, he would not have got into the order." In reply to the question, "Supposing he answered the questions truly that he had reformed and taken the Keeley cure?" the witness said: "I know they would have asked more questions. They would not have taken him without asking more questions and would have asked questions of the doctor, and probably would have had another examination. * *"

"Q. But you don't know what the supreme court would have done in the event he had answered the questions truly?

A. I am satisfied from the action they take in other cases.

Q. What?

A. I am convinced from the action they take in other cases they have sent back, they would have sent back the application, and asked more details concerning it."

Phillips further testified that he had known Whigham about a year and a half before he joined the order, and that just before their acquaintance began, the applicant had taken the Keeley cure.

Mrs. Whigham, the plaintiff, testified that about Christmas, 1900, she consulted with Dr. Fenton, who was then treating her husband, and informed the physician that Mr. Whigham had taken the Keeley treatment for alcoholism about 12 years before. Dr. Fenton as a witness denies this statement; but, giving to it the credence to which it is entitled on a motion for a judgment of nonsuit, he must have known from the plaintiff's narrative that her husband's answer was false, wherein he stated that his habit in respect to the use of intoxicants during his life had been temperate. The evidence shows, however, that this knowledge was not acquired by the physician when he was employed by, or discharging any duty for the defendant. In the former opinion it is said:

"The subordinate court or lodge of a fraternal society, or an officer thereof, whose duty it is to perform some service for or on behalf of the supreme lodge, is generally regarded as an agent of the governing body, for the purpose of receiving members and collecting assessments and dues. * * If, with full knowledge of an applicant's false answers or statements, a local lodge receives and admits him as a member, or if, after his admission, the officer whose duty it is to collect his assessments learns of the false statements, and thereafter receives the assessments and remits them to the supreme order, the society will, as a general rule, be held estopped from pleading the false statements or representations as a defense to an action on the benefit certificate. * * But, before there can be an estoppel or waiver, it must appear that the local court or society, or some officer thereof, charged with the performance of some act for the benefit of the supreme order, knew or had notice of the falsity of the answer or warranty contained in the application or examination paper at the time deceased was received as a member, or when his subsequent assessments were received and collected."

The rules thus announced carry the doctrine of agency as far as justice would seem to demand, and it is only when an agent is acting for his principal, and within the scope of his authority, that notice to the agent of matters that would affect his principal is binding upon the latter: 1 Am. & Eng. Ency. Law (2 ed.), 1146; *Pennoyer* v. *Willis,* 26 Or. 1 (36 Pac. 568: 46 Am. St. Rep. 594); *Dight* v. *Chapman,* 44 Or. 265 (75 Pac. 585: 65 L. R. A. 793). Dr. Fenton was not performing any service for the defendant when he acquired the information imputed to him that would render his knowledge binding upon it. When Whigham was a member of the order Frank Legrande was the financial secretary of Court Pacific, whose duty it was to collect from him the dues and assessments, and remit them to a superior officer. If Phillips' testimony as to the conversation he had with Legrande is material, it is insufficient to make a case to be submitted to the jury, because neither Phillips nor Legrande knew that Whigham had made false answers to the questions asked him at his medical examination, and any declaration made by either, in relation to the matter, was conjectural.

As the defect in the testimony pointed out in the former opinion was not overcome at the last trial, errors were committed in denying the motion for a judgment of nonsuit and in refusing to charge the jury as requested. The judgment is reversed, and the cause will be remanded for such further proceedings as may be necessary, not in conflict with the views here expressed.          REVERSED.