Argued January 27, affirmed February 21, 1928.

## ELBERT DYER *v.* E. B. THRIFT ET AL.

(264 Pac. 428.)

**Improvements—Contract Authorizing Purchaser to Keep Building and Appurtenances in Good Condition Did not Authorize Purchaser to Charge Vendor's Estate With Lien for Digging Drainage Ditch (Or. L., § 10191).**

1. Provision of contract for sale of ranch, authorizing purchaser to keep all buildings and appurtenances on the property in good condition and repair, *held* not to constitute purchaser vendor's agent within Section 10191, Or. L., so as to permit him to charge vendor's estate with a mechanic's lien for work and labor done by contractor in digging drainage ditch on the ranch.

**Improvements—Evidence of Blue-prints Shown to Vendor Held not to Show Knowledge of Construction of Drainage Ditch Authorizing Lien (Or. L., §§ 10194, 10214).**

2. Evidence that heir received letter relating to drainage improvement on ranch sold by him, and that purchaser called on him with blue-prints, which were but notice of purchaser's hopes and intention in regard to the property, based on a plan to subdivide the property, etc., and in which the drainage canal was only a minor portion thereof, *held* not to show that heir obtained knowledge of the construction of the ditch within Sections 10194, 10214, Or. L., permitting contractor constructing ditch to impress lien on heir's estate for materials and labor furnished.

Improvements—Evidence That Vendor was not Informed by Purchaser of Digging of Drainage Ditch Held not to Show Knowledge of Construction Thereof Authorizing Lien (Or. L., §§ 10194, 10214).

3. Evidence that heir received a letter relating to drainage ditch on ranch sold by him, but that contractor did not commence work for more than two and one-half months later, and that he did not feel himself bound to construct the ditch, and that purchaser failed to inform heir that he had let a contract for digging the ditch, *held* not to show that heir had obtained knowledge of construction of the ditch within Sections 10194, 10214, Or. L., permitting his interest to be subject to contractor's lien for labor and material furnished in digging ditch.

Improvements—Vendor Who was Present at Conference Held not to have "Knowledge" Ditch was Dug, Authorizing Lien for Labor and Materials (Or. L., §§ 10194, 10214).

4. Vendor who did not receive letter relating to purchaser's plans to improve land, but who was present at conference between vendee and other vendors, *held* not to have "knowledge" of drainage ditch dug on land under Sections 10194, 10214, Or. L., authorizing lien on his interest for labor and materials furnished.

Appeal and Error—Supreme Court may Write Own Decrees in Equity Suits.

5. Since trials in equity suits are conducted *de novo*, Supreme Court may write own decrees.

---

Appeal and Error, 4 C. J., p. 726, n. 17.
Mechanics' Liens, 40 C. J., p. 125, n. 3, 8, p. 127, n. 49, 51, p. 458, n. 15, p. 472, n. 89.

From Curry: JOHN C. KENDALL, Judge.

Department 1.

This is a suit to establish and foreclose a mechanic's lien upon a tract of 840 acres of land in Curry County. There is no question of pleading involved; hence we shall proceed with a consideration of the evidence. For many years the land in question was owned by one A. H. Thrift. Upon his death, title became vested in the defendants, his heirs, as tenants in common. March 19, 1920, George P. Laird and three others entered into a contract whereby the four undertook to purchase the above tract of land from the defendants for the sum of $72,000 payable in installments; later

Laird acquired the interest of his three associates. While Laird was in possession he conceived the idea of subdividing the ranch into tracts, most of which would contain approximately sixty acres. His plan included the construction of a county road across the land and the digging of a drainage canal. He and Laird testified that in January, 1922, the two entered into a contract whereby the plaintiff undertook to dig the canal at the price of $7.50 per rod. The plaintiff deposited the material excavated upon the north side of the ditch so as to render it usable for the proposed county road. The plaintiff claims $4,980 for his services in digging the ditch; upon this sum he credits $1,000 paid him by the county as compensation for his service in throwing the excavated material upon the north side of the ditch. When the balance was not paid, the plaintiff filed a lien notice; since there is no question about the regularity of this notice, we shall pass on to the next matter.

It will be observed from the foregoing that the plaintiff's contract was not with the owners of the fee, but with Laird, the vendee. In his endeavors to render the fee liable to his claim, the plaintiff contends: 1. That one of the defendants, E. B. Thrift, was the agent of all the heirs, or at least of all those heirs who were the daughters of the deceased, and that he was familiar with Laird's plan of digging the ditch and failed to post a nonliability notice within the statutory time; 2. That when the defendants inserted in the contract of sale the following clause, they thereby appointed Laird and his associates their agents; hence the defendants' interest in the land is liable for the debts contracted by the vendees in the improvement:

"And further agree to keep all of the buildings and appurtenances on the above described property in good condition and in a good state of repair, and that they will not quit the said premises during the life of this agreement without replacing the said premises in as good a condition as of the date hereof."

3. In his further efforts to render the fee liable to the lien, the plaintiff contends that the defendants had actual knowledge on or about February 6, 1922, that the plaintiff had let a contract to dig the ditch; that in March, Laird called upon three of the defendants and showed them some blue-print plans upon which appeared an outline of the proposed drainage canal, and at that time explained to the three what he expected to do; that after the plaintiff commenced his work defendant, T. J. Thrift, saw the ditch digging machine upon the ranch and was told what it was there for. The plaintiff contends that the defendants failed to post notices of nonliability within three days of the time that they acquired the foregoing information, and that therefore their interest in the land is subject to his lien. In the Circuit Court the decree was for the defendants; the plaintiff appeals.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. George P. Topping.*

For respondent there was a brief over the names of *Mr. John D. Goss* and *Mr. A. J. Sherwood,* with an oral argument by *Mr. M. W. Skipworth.*

ROSSMAN, J.—Section 10191, Or. L., provides:

"Every mechanic * * builder, contractor * * and other persons performing labor upon * * any * * ditch * * shall have a lien upon the same for the

work or labor done * * at the instance of the owner of the building or other improvement, or his agent; and every * * person having charge of the construction, alteration or repair, in whole or in part of any building or other improvement * * shall be held to be the agent of the owner for the purpose of this act."

Section 10192 extends the lien to the land. Section 10194 provides:

"Every building, or other improvement mentioned in section 10191, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration, or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

Section 10214 provides:

"Any person or persons who shall hereafter clear any land or improve the same by ditching, * * at the request of the owner, or with his knowledge or consent, shall have a lien on said land so improved, * * for his wages and charges for the said service * * which lien shall be preferred to every other lien, mortgage or encumbrances of a subsequent date, unless such owner or person having or claiming an interest therein shall within three days after he shall have obtained knowledge of said clearing, ditching * * give notice that he will not be responsible for the same, by posting notice in writing to that effect in some conspicuous place on said land."

1. Plaintiff contends that the section of the contract quoted in the statement of facts preceding this decision, which required Laird to keep the premises in a good state of repair, constituted Laird defendants' agent within the contemplation of Section 10191, Or. L. To support this proposition he calls our attention to a number of authorities, of which the following are the best examples: *Myers* v. *Strowbridge Estate Co.*, 82 Or. 29 (160 Pac. 135); *Oregon Lumber & Fuel Co.* v. *Nolan*, 75 Or. 69 (143 Pac. 935, 146 Pac. 474); *Henderson* v. *Connelly*, 123 Ill. 98 (14 N. E. 1, 5 Am. St. Rep. 490); *Sheehy* v. *Fulton*, 38 Neb. 691 (57 N. W. 395, 41 Am. St. Rep. 767). One reading these cases will observe that they rest upon the proposition that the party whom the court found to be agent was required by his undertaking to erect some definite structure. Thus in *Oregon Lumber & Fuel Co.* v. *Nolan, supra,* the lessee was required to build upon the leased premises "a substantial rooming, boarding or apartment house building * * at a cost of not less than $6,000." In *Myers* v. *Strowbridge Estate Co., supra,* some very extensive "changes, repairs, alterations, additions and improvements" were mentioned in the lease and the tenant was required to erect them, "subject, however, to the approval of said lessor, and the plans therefor are to be submitted by the said lessee to the said lessor before any work, changes or improvements are made to said premises." In the Illinois and Nebraska cases the improvements to be erected by the vendee were agreed upon with similar particularity. It will be observed in all of these cases that the parties had stipulated for some definite improvements, and the liens which constituted the subject matter of the suit arose out of debts contracted while producing the structure which

the tenant or vendee undertook to erect for his other contracting party. But in the present case Laird was required to build neither a road nor a ditch. The idea of making these improvements originated in his mind and was not the result of any contractual obligation imposed upon him by those to whom the plaintiff says he bore the relationship of agent. To hold with the plaintiffs would charge the vendor's estate with a lien for debts contracted by his vendee while making the various sorts of improvements which might occur to a vendee's mind. Such is not the law: *Wilson* v. *Gevurtz*, 83 Or. 91 (163 Pac. 86, L. R. A. 1917D, 575).

The plaintiff does not attempt to connect himself with the owners of the fee by a contract directly with them; his efforts as we have seen to connect himself with the owners of the fee on the theory that Laird was agent for them has failed. But let us now see whether the fee should be impressed with a lien on the charge that the defendants had knowledge of the improvement and failed within three days thereafter to post the appropriate notice of nonliability. First, he contends that E. B. Thrift was agent for all the other defendants at the time when these events were transpiring. Much of the evidence was addressed to this contention. But this becomes a matter of no consequence unless E. B. Thrift was in possession of such facts that he, in his individual capacity, likewise had knowledge of the construction of the drainage canal. The knowledge possessed by E. B. Thrift and his brothers and sisters may be summarized as follows: About February 6, 1922, Laird attached his signature to the circular letter and mailed it to the defendants; his list of addresses was shown to contain some errors. In addition to much other matter

the letter contained the following statement: "I am building a county road East to West through the center of the ranch and have let a contract to Mr. Dyer for two and one-half miles of ditching." A. A. and E. B. Thrift admitted that they received their copies of this letter; E. B. Thrift was uncertain whether or not he received his copy. We do not believe that the evidence would warrant a finding that the other copies reached their destination. September 20, 1921, Laird wrote E. B. Thrift a letter, which after referring to many other matters incidentally made reference to a future plan for a county road and ditch. In the early part of March Laird called upon E. B., A. A. and F. L. Thrift and displayed the blueprint map referred to in the statement of facts preceding this decision. While there is some controversy upon the subject, we believe that the evidence warrants the conclusion that the principal subject discussed at this conference related to Laird's hopes of refinancing himself, and that the drainage canal was mentioned only incidentally. The map showed the physical features of the ranch and bore some lines entitled "Proposed County Road"; alongside of these lines were two others entitled "Proposed Drainage Canal." Laird testified that he left a copy of this map with the brothers; they stated they had no recollection of its receipt. Nothing was said as to when Laird expected to begin construction of the canal. However, March 1, 1922, T. J. Thrift visited the ranch and saw the digger machine upon it, and was told what it was there for. July 23, 1922, A. A. Thrift and E. B. Thrift came from California to the ranch for the purpose of ascertaining why Laird had not paid some installments which were then overdue. They saw the ditch digger upon the property and

that portion of the canal which had been completed. Within three days thereafter, that is, on July 26th, they posted notices of nonliability.

Having reviewed the facts, the question presents itself, do these facts show that prior to July 23d the defendants "obtained knowledge of the construction" of the drainage canal? It will be noticed that the statute uses the words "knowledge of the construction"; not knowledge of the plan or intention to construct something. While we do not believe that any vast importance attends this choice of phraseology, yet in the present case we believe that construction did not begin until the work was actually started with the ditch digger. In some rare instances, it might be possible that the preparation of the plans, the assembling of equipment and the drafting of specifications might constitute a part of the construction—upon that we venture no opinion. In our case we are confronted with none of these elements. The contract rested in parol and it was apparently a conditional one; that is, we do not believe that one would be warranted in concluding that the plaintiff bound himself to proceed until he felt assured that the defendants' estate was subject to a possible lien. He knew that Laird was the owner of only a limited estate in the premises and apparently did not concern himself with the failure of Laird's letters to produce more than two replies, both of which must have been unsatisfactory. Likewise he did not commence actual construction until May 18th, practically four months after the making of the contract, and more than two and one-half months after he brought his digger to the premises. Can we now say that any or all of the defendants, or some of them, had knowledge of the construction of the ditch prior to July 23d?

In *Allen & Krosel* v. *Rowe,* 19 Or. 188 (23 Pac. 901), this court in referring to the portion of the statute which now concerns us said:

"Under this section when the owner of the land did not employ the laborer or materialman to furnish the materials, but the same was done by some other person, it must have been done with the knowledge of the owner or person having or claiming an interest in the land. In such case knowledge of the owner or person having or claiming an interest must exist and be shown as a fact. When this fact does appear, the lien reaches and binds his interest unless he relieved himself in the manner provided in the section by posting the notice within three days after he obtained such knowledge."

In *Wertz* v. *Mulloy,* 144 Ill. App. 329, the court said: "He knowingly permits a thing to be done who knowing that it is being done and being present where he can object, and who has an interest to object, does not object." In *Hunter* v. *Cordon,* 32 Or. 443 (52 Pac. 182), this court said:

" * * * when another has made improvements to the owner's land and the latter's interest therein can be reached only in consequence of his knowledge and failure to give the required notice, and when he remains silent under such circumstances the statute permits the lienor to invoke the doctrine of an estoppel *in pais,* and the burden of proof being upon him to establish the particular fact which confers the right, he must, as a condition precedent to its exercise, allege the owner's knowledge of the construction, alteration or repair of a building upon his land by another before he is entitled to the relief which the statute affords."

2. The latter case seems to suggest the more satisfactory rule, that is, that there must be a degree of knowledge similar to that present in an estoppel

*in pais.* We have previously reviewed the facts showing what knowledge each one of the defendants possessed. Thus A. A. Thrift received the letter February 6th and Laird called upon him with the blue-prints; but this was notice not that something was being constructed, but notice of Laird's hopes and intentions in regard to the property. These hopes were built around a plan to subdivide the property, construct a county road, build a drainage canal, rehabilitate the farm buildings, refinance himself and then sell the several tracts. The drainage canal was only a minor portion of the plan. We do not believe that we can say that A. A. Thrift "obtained knowledge of the construction" of the ditch through the foregoing. E. B. Thrift received the letter of September 20, 1921, and the letter of February 6th; Laird conferred with him when he held his conference with A. A. Thrift and F. L. Thrift.

3, 4. The observations which we made concerning A. A. Thrift, apply equally to this defendant. T. J. Thrift received the letter of February 6th and saw the digger upon the premises March 1st. However the plaintiff did not commence work until May 18th, more than two and one-half months later; in the meantime, as we have observed before, he apparently did not feel himself bound to construct the drainage canal. When Laird spoke to the three brothers at San Jose in March, he did not inform them that he had let a contract to the plaintiff for the digging of the ditch. Under these circumstances we do not believe that this defendant's interest should be subject to the lien. F. L. Thrift did not receive the circular letter, but was present at the conference that Laird held with A. A. Thrift and E. B. Thrift. We do not believe that it can be said of him that he obtained

knowledge of the construction of the canal. The rest of the defendants did not receive the circular letter, were not shown the blue-print plan, and were not visited. We do not believe that their interest in the land is subject to a lien.

5. It is to be regretted that plaintiff's efforts have brought him no more than $1,000; however, he knew that Laird's estate was a limited one. The evidence discloses that the plaintiff was a director in a local bank, hence we assume that he possessed knowledge of Laird's financial condition and elected to proceed with a venture that depended for its success upon Laird's ability to sell the subdivided farm. It is also worthy of consideration that there was much evidence to the effect that the drainage canal was constructed in the wrong place to be serviceable and was unnecessarily expensive. This is not an action upon a *quasi*-contractual obligation founded upon unjust enrichment, but is an action brought to enforce an alleged statutory right. Our findings are in accord with those of the lower court. The latter tribunal, after entering a first decree allowing judgment against no one, vacated it at the next term and entered a new one in which judgment was given against Laird and denied as to all other defendants. The court's act in so doing was assigned by plaintiff as error, on the theory that since the term had expired in which it entered its first decree it had lost jurisdiction over the matter. However, since trials in equity suits are conducted in this court *de novo* we may write our own decrees. We adopt the second decree as our own. Costs to neither party. Second decree affirmed.                              AFFIRMED.

RAND, C. J., and BEAN and McBRIDE, JJ., concur.