Argued February 29, affirmed March 27, costs taxed May 29, 1928.

## F. E. WILLIAMS *v.* E. L. SHARPE ET AL.

(265 Pac. 793.)

**Mechanics' Liens — Lessee, Under Contract Requiring Him to Keep Premises in Repair, Held not Agent for Owners so as to Subject Premises to Mechanic's Lien.**

1. Lessee, under contract stipulating that he should use premises well, and keep the same in good condition and repair, *held* not an agent for owners sufficient to subject premises to liability for a mechanic's lien; such stipulation not necessarily requiring any work or affording notice of definite work.

**Mechanics' Liens — Vendee in Possession is not Owners' Agent in Contracting for Labor and Material.**

2. Vendee in possession was not agent of owners so that his request for labor and material became liability of owners.

**Mechanics' Liens—Finding That Person Acting for Owners in Renting Premises was not General Agent, Whose Knowledge of Repairs Would Charge Owners, Held Sustained.**

3. In suit to establish and foreclose a mechanic's lien, finding of lower court that person acting for owners in lease of premises, and thereafter collecting rent, was not general agent, whose knowledge of labor expended on premises would charge owners thereof, *held* sustained by evidence.

**Principal and Agent — Agent With Authority to Collect Rents or Installments is not "General Agent."**

4. Agent whose authority is limited to the matter of collecting rents or installments upon contract is not a "general agent."

---

1. Improvements by lessee as subjecting realty to mechanics' liens, see notes in 2 Ann. Cas. 689; 11 Ann. Cas. 1082; 19 Ann. Cas. 734; Ann. Cas. 1916C, 1133. Power of lessee to subject owner's interest to mechanic's lien, see notes in 23 L. R. A. (N. S.) 601; L. R. A. 1917D, 577. See, also, 18 R. C. L. 898.

Mechanics' Liens — Agent's Knowledge of Labor Did not Charge Owners With Knowledge so as to Authorize Mechanic's Lien.

5. Where matter of repairing and improving premises was outside of scope of authority conferred on agent collecting rents thereon, his knowledge of labor expended on premises was not sufficient to charge owners therewith so as to subject premises to liability for mechanic's lien.

Mechanics' Liens — Owners Need not Post Nonliability Notice, in Absence of Knowledge of Labor (Or. L., § 10194).

6. Owners of premises under mechanic's lien statute (Or. L., § 10194) *held* not required to post notice of nonliability, in absence of some knowledge as to work being performed thereon.

Agency, 2 C. J., p. 649, n. 53.
Mechanics' Liens, 40 C. J., p. 95, n. 18, p. 96, n. 20, 22, p. 107, n. 90, p. 111, n. 82.

From Benton: G. F. SKIPWORTH, Judge.

Department 1.

AFFIRMED.    COSTS TAXED.

For appellant there was a brief and oral argument by *Mr. Arthur Clarke.*

For respondents there was a brief over the name of *Messrs. Yates & Yates,* with oral arguments by *Mr. Jay L. Lewis* and *Mr. O. Middlekauff.*

ROSSMAN, J.—This is a suit to establish and foreclose a mechanic's lien. There are no questions of pleading involved; hence we shall proceed with a consideration of the evidence. Between May 8 and November 24, 1923, the plaintiff testified that he expended 360½ hours of labor upon the premises in question at the request of one E. L. Sharpe. He asks for compensation at the rate of seventy-five cents per

5. See 21 R. C. L. 841.
6. Statutes giving lien where owner with knowledge of the improvement fails to give notice of nonliability, see notes in 23 L. R. A. (N. S.) 618; L. R. A. 1917D, 584. See, also, 18 R. C. L. 907.

hour, making a total of $270.25. The lower court gave the plaintiff judgment against Sharpe, but denied him a lien upon the premises. He appeals from that portion of the decree denying him a lien. His labor consisted of some carpenter work, painting the roof and outside walls, and in installing plumbing and sanitation appliances. April 14, 1923, the defendant Orvilla A. Crail, in whom title to the property was at that time vested, executed her deed to the defendants O. Middlekauff and J. F. Yates. The description of the property in this deed was inaccurate, and on January 14, 1925, Mrs. Crail executed another deed to correct this error. Both deeds were promptly recorded. Pursuant to the previous deed, Mrs. Crail went out of possession and her grantees took possession. Middlekauff and Yates apparently desired a tenant for the premises and with this object in mind secured the services of one Henry Ambler, a real estate agent, who resided in Philomath. Ambler found Sharpe; Sharpe and the defendants Middlekauff and Yates entered into an agreement by which Sharpe was given possession, and agreed to pay $10 per month rent; he paid the additional sum of $1 provided for in the contract, which gave him an option to purchase the property at the price of $1,350. In addition to the $10 payments, Sharpe was required to pay interest on the sum of $1,350.

From the foregoing it is evident that Sharpe was a lessee in possession under a contract giving him an option of purchase. Sharpe concluded that he would like to improve the premises; at that time he was operating a small lumber-mill; the plaintiff was in his employ. While thus working on and off in the mill, the plaintiff expended the foregoing hours of labor upon the dwelling-house occupied by Sharpe. The

house was a modest one, yet the plaintiff testified that he spent 213½ hours in painting it. This work consisted of brushing off some of the old paint with a wire brush and applying two coats of new paint to the walls and one coat on the roof; one fourth of the roof was given two coats. A reliable witness testified that the work should have been done in 96 hours. The plaintiff's work was intermittent; the latter part of it was done apparently at odd hours. In August he worked four days upon this job; September 12th he put in one hour's time and thereafter did not appear upon the premises again until November 24th, when he worked for three hours installing a sheet of glass in a window and repairing a drain-pipe. Sharpe had quit the premises before this last work was done. Thereafter plaintiff filed the lien which he now seeks to foreclose. It may well be doubted whether one who commences work on May 8th and substantially completes his task in August can come back at two brief intervals over a space of approximately three and one-half months' time, work on the one occasion one hour and upon the other three hours, and thus keep open the period of time in which to file a lien. Just before the lien was filed Sharpe's mill apparently failed. The circumstances suggest that the lien was resorted to when the mill failed to supply the proper remunerations. We shall not pause, however, to determine the issue raised by the defendants' objections to the lien, based upon the foregoing circumstances, but shall go on and ascertain whether Sharpe was the agent of the defendants so that his request for the work fastened liability for its cost upon the defendants; also whether Ambler was the agent of defendants, so that his knowledge of the progress of the work necessitated

the defendants posting notices of nonliability in order to escape the consequences of Ambler's knowledge.

1. The contract between Sharpe and the defendants Middlekauff and Yates stipulated that "lessee shall use said premises well and keep the same in good condition and repair at all times, * * *" We do not believe that the evidence necessarily warrants a conclusion that Sharpe's work consisted of making repairs. The installation of a septic tank, reshingling a roof and painting it, raising floors to a common level, could hardly be considered as repair work. This court has held that such a provision does not subject the other party's interest in the premises to liability for a lien, because the stipulation does not necessarily require any work, nor does it afford notice of any definite work: *Wilson* v. *Gevurtz*, 83 Or. 91 (163 Pac. 86, L. R. A. 1917D, 575); *Dyer* v. *Thrift*, decided February 21, 1928 (264 Pac. 428).

2. A vendee in possession is not the agent of the owner so that his requests for labor and materials become the liability of the vendor: *Dyer* v. *Thrift*, *supra; Belnap* v. *Condon*, 34 Utah, 213 (97 Pac. 111, 23 L. R. A. (N. S.) 601); *Alaska Plumbing Co.* v. *Bingham*, 58 Or. 506 (115 Pac. 159); *Schram* v. *Manary*, 123 Or. 354 (260 Pac. 214).

3, 4. We shall now proceed to ascertain whether Ambler was the agent of Middlekauff and Yates. This is almost entirely an issue of fact; the lower court found against the contentions of the plaintiff. He had the advantage of seeing and hearing the witnesses, an advantage which we do not possess. For his work in finding Sharpe, Ambler was paid a commission of $15, which he retained out of the first two $10 installments; thereafter, out of each monthly in-

stallment of $10, he kept the sum of fifty cents commission for collecting the installment. However, only four installments were paid. It is the contention of the plaintiff that Ambler was the general agent of the defendants, and that hence his knowledge that Sharpe was making repairs and improvements upon the premises was the knowledge of the defendants; the defendants contend that Ambler was only a rental agent, with authority limited to the collection of the rent. The small compensation which he received would seem to place him in the latter class rather than in the former; at least it is a circumstance of some significance.

Plaintiff especially relies upon a letter dated May 17, 1923, written by Middlekauff to Ambler; a portion of which is as follows:

"Enclosed herein please find the contracts for the sale of the Crail property by Mr. Yates and myself to E. L. Sharpe. Will you kindly deliver one copy of this contract to Mr. Sharpe and reserve the other copy yourself, proceeding to make the collection of rent as it falls due on the 10th of each month, and proceed with this matter as agreed upon by Mr. Yates and I at Philomath, calling upon him or myself in case anything new arises in that connection."

Mr. Ambler replied that he had received the letter, had delivered one copy to Sharpe, "keeping the other one as per your request." Thereafter Middlekauff wrote to Ambler that Mrs. Crail, from whom Middlekauff and Yates had purchased the property, claimed some of the outbuildings; the letter stated that Middlekauff had previously been ignorant of any contention of this kind, and that he would like to hear from Ambler. Ambler replied that he had investigated the matter and found that there were two small outbuild-

ings; that Sharpe needed only one, and that Mrs. Crail could have the other. This minor adjustment arising out of the disposition of the property is the only service of any kind that Ambler rendered for the defendants, outside of collecting the four monthly installments of $10 each, and disposing of the property to Sharpe. The plaintiff, however, contends that that portion of the letter, "proceeding with this matter as agreed upon by Mr. Yates and I at Philomath, calling upon him or myself in case anything new arises in that connection," constituted Ambler a general agent. Further, the plaintiff contends that when the property was disposed of to Sharpe, the parties had agreed that some repairs were necessary, and that Sharpe should make them. The evidence is not clear that any repairs were necessary. The house apparently was not elaborate in its appointments, nor was the rent so large that one might expect to find within the house all of the desirable conveniences. Sharpe testified that when the written document was agreed upon, something was said about repairs and improvements; he does not contend that either he or the defendants agreed to make any repairs and improvements. His own words are, "nothing was required, unless I wanted to make it." Upon the other hand, both defendants testified that nothing was said about any repairs or improvements; they testified that Sharpe stated that all of his money was tied up in the mill, and hence he could not make a deposit upon the purchase price. Ambler had departed this life at the time of the trial; hence, when we come to ascertain what was said in that conversation, we have Sharpe on the one side, and the two defendants on the other; the plaintiff has the burden of persuading the court.

125 Or.—25

The trial judge, who has had many years of experience upon the bench, after hearing the witnesses, resolved this issue in favor of the defendants. We find no occasion for holding otherwise. An agent whose authority is limited to the matter of collecting rents or installments upon a contract is not a general agent: 2 C. J., Agency, 648, 649; 40 C. J., Mechanics' Liens, § 80; *Daly* v. *Arkadelphia Milling Co.,* 126 Ark. 405 (189 S. W. 1053).

In all of the cases cited by the plaintiff as authority for his statement that knowledge by an agent of work in progress charges the principal, it will be found that the agent had general authority, or authority to attend to the matter of the repair and improvement of the premises. Thus in *Pacific Lumber Co.* v. *Wilson,* 6 Cal. App. 561 (92 Pac. 654), the agent "the son of defendant, a businessman, was authorized by the defendant to collect the moneys due defendant on the contract after it matured, and to look after the business of the defendant while she was away"; it was therefore held that his knowledge of the improvements bound the principal.

In *Fisher* v. *McPhee etc. Co.,* 24 Colo. App. 420 (135 Pac. 132), the agent had general authority; thus the court said: "McGrew was general agent of the owner so far as this property was concerned, having full charge of the premises, authority to make repairs thereon, rent the same, etc. and under this section his knowledge as to matters affecting the property will be charged to his principal." Similar authority upon the part of the agent existed in the two other cases cited in the brief of the plaintiff, *Jefferson* v. *Leithauser,* 60 Minn. 251 (62 N. W. 277), and *Title Guarantee Co.* v. *Wrenn,* 35 Or. 62 (56 Pac. 271, 76

Am. St. Rep. 454). The words of the letter, which we have quoted, do not mention repairs, and do not confer general authority. The conversation which preceded the writing of that letter did not mention repairs and improvements. We believe that under the evidence the words of the letter mean that Ambler should attend to the matter of collecting the installments of rent as they become due, and conferred no authority to attend to any matter of repairs or improvements. The fact that Ambler, on behalf of the defendants, attended to the matter of adjusting the ownership of a meager outhouse we do not believe is evidence that he was possessed of general authority; this was evidently a matter that grew out of his disposal to Sharpe of the premises; perhaps it was nothing more than an act of courtesy upon his part. Ambler from time to time stopped at the house and watched the plaintiff proceed with his work. The evidence shows that Ambler owned some acreage beyond this property which was in course of cultivation; the two men were apparently friends, and that when he called at the house he was on his way to the acreage. He never went inside of the house and apparently did not attempt to supervise the repairs and improvements. This evidence is insufficient to establish Ambler's agency. The evidence also shows that Middlekauff and Yates had never been inside of the house. This circumstance, together with the foregoing, the plaintiff argues has a strong tendency to show that Middlekauff and Yates relied upon Ambler; however, we believe that many instances present themselves in daily practice where an owner rents premises without seeing the interior. This situation does not convert the rental agent into a general one. We do not find anything in the evi-

dence that would warrant a conclusion that the defendants Middlekauff and Yates and Ambler discussed the matter of repairs and improvements, or that the defendants conferred upon Ambler authority general in nature. In the absence of such a showing we would not be justified in finding that it was within the scope of his employment to attend to the matter of repairs and improvements.

5. The matter of repairing and improving the premises being outside of the scope of the authority conferred upon Ambler, his knowledge of the labor expended upon the premises did not charge the defendants: *Pennoyer* v. *Willis*, 26 Or. 1 (136 Pac. 568, 46 Am. St. Rep. 594); *Whigham* v. *Independent Foresters*, 51 Or. 489 (94 Pac. 968).

6. The evidence clearly establishes that none of the defendants had any actual notice of the work being performed by the plaintiff. While this work was in progress, Middlekauff and Yates resided at Corvallis; Mrs. Crail resided at Roseburg. Under our mechanic's lien statute, they were not required to post notices of nonliability in the absence of some knowledge, and hence their interest in the property is not subject to the lien. The plaintiff dealt with Sharpe; the lower court gave him judgment against Sharpe. Our mechanic's lien statute which the plaintiff invokes contains no provision which enables the plaintiff to reach the defendants' property. Having taken the foregoing view of the facts which is all in accord with the findings of the trial judge, it becomes unnecessary to consider the matter of the priority of the defendant Ellsworth's mortgage.

The decree of the lower court will be affirmed.

AFFIRMED. COSTS TAXED.

RAND, C. J., and COSHOW and MCBRIDE, JJ., concur.